Thomas C. SMITH, III, Appellant,

v.

Darnell MANSON and The
City of Pittsburgh.

Commonwealth Court of Pennsylvania.

Argued May 7, 2002.
Decided Sept. 6, 2002.

Jeffrey Hoffman, Gibsonia, for appellant.

Craig M. Straw, Pittsburgh, for appellees.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and DOYLE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Appellant Thomas C. Smith, III appeals from an order of the Court of Common Pleas of Allegheny County that denied Smith's motion for post-trial relief from the court's order granting the City of Pittsburgh's (City) motion for directed verdict. The issue presented in this case is whether a dangerous condition in the curb along a street may result in the imposition of liability on a local agency under Section 8542(b)(6) of the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), *as amended*, 42 Pa.C.S. § 8542(b)(6).

This litigation arises from the wedge curb that borders Crucible Street in the City. A wedge curb is a triangular section of asphalt used primarily to direct water into the sewers and away from adjacent yards. The wedge curb on Crucible Street is tapered down at an angle of approximately 30 degrees, resembling a ramp, with the street's berm being approximately two feet higher than adjoining yards. Such wedge curbs are commonly used in the City, and this one was installed along Crucible Street at the City's direction in 1998.

On April 29, 2000, Smith was traveling on Crucible Street as a passenger in an automobile driven by his friend, Darnell Manson. The posted speed limit on the street was 25 miles per hour, and according to the trial court Manson admitted that

he traveled at a high rate of speed. As Manson drove along Crucible Street, one of the wheels of the vehicle left the roadway. The vehicle tilted to the side, with its undercarriage scraping along the wedge curb. As Manson attempted to return the vehicle to the road, it collided with a utility pole. Smith was catapulted from his seat and struck his head on the window. He sustained a severe laceration and fractured a bone in his neck.

Smith filed a civil complaint against Manson and the City, alleging that Manson was negligent in the operation of his vehicle and the City was negligent by creating a hazardous condition on Crucible Street. A jury trial was held before the trial court in May 2001. Smith reached a settlement with Manson. At the conclusion of the trial, the court granted the City's motion for a directed verdict on the grounds of governmental immunity. Relying upon the Pennsylvania Supreme Court's decisions in *Dean v. Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000), and *Lockwood v. City of Pittsburgh*, 561 Pa. 515, 751 A.2d 1136 (2000), the trial court concluded that Smith's suit against the City was not within the streets exception to governmental immunity because Smith did not allege a dangerous condition on the traveled portion of the street surface. Smith filed a motion for post-trial relief, which the trial court denied.[1]

■ Section 8541 of the Tort Claims Act, 42 Pa.C.S. § 8541, shields local agencies from liability for any damages on account of any injury to a person or property unless liability is imposed upon the local agency by one of the exceptions to governmental immunity enumerated in Section 8542. Those exceptions must be strictly construed because the legislature, when enacting the Tort Claims Act, clearly intended to insulate local agencies from liability save only in the specifically defined situations. *Kiley v. City of Philadelphia*, 537 Pa. 502, 645 A.2d 184 (1994). Smith contends that the alleged dangerous condition of Crucible Street comes within the streets exception in Section 8542(b)(6)(1), which provides that the following act may result in the imposition of liability on a local agency:

A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

The Supreme Court's decisions in *Dean* and *Lockwood* are companion cases that address the question of whether a governmental entity's failure to erect a guardrail along a roadway might constitute a dangerous condition resulting in the imposition of liability on the governmental entity. The plaintiff in *Dean* was a passenger in a motor vehicle that fishtailed on a snow-covered section of U.S. Route 22, causing the driver to lose control of the vehicle. The vehicle left the roadway, traveled down a steep embankment and overturned, causing the plaintiff severe injuries with

---

1. Because the issues in this appeal are purely questions of law, the Court's review is plenary. *Montgomery v. Bazaz–Sehgal*, 568 Pa. 574, 798 A.2d 742 (2002). A court reviewing the propriety of a directed verdict must accept as true all facts and inferences tending to support the party against whom the directed verdict was granted and must reject all testimony and inferences to the contrary. *Jacobini v. V. & O. Press Company*, 527 Pa. 32, 588 A.2d 476 (1991).

resultant quadriplegia. The plaintiff filed a complaint against the Department of Transportation, alleging that the Department was negligent in failing to erect a guardrail on the section of roadway where the accident occurred. The Supreme Court held that the plaintiff's cause of action did not fall under the real estate exception to sovereign immunity found at Section 8522(b)(4) of the act commonly known as the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4).[2] The court explained that the lack of a guardrail could not be said to be a dangerous condition resulting in a reasonably foreseeable injury to the plaintiff because it did not render the property unsafe for the intended purpose of travel on the roadway.

The Supreme Court in *Lockwood* reached this same conclusion with respect to Section 8542(b)(6) of the Tort Claims Act. The plaintiff in *Lockwood* was a passenger in a motor vehicle operated by an intoxicated driver. The driver failed to negotiate a sharp curve, and the vehicle traveled off the roadway, went down an embankment and struck a tree. The plaintiff filed a complaint against the City, alleging that it was negligent in failing to erect a guardrail. Following the reasoning of *Dean*, which was filed on the same day, the court held that the failure to install a guardrail does not constitute a dangerous condition of streets and therefore does not fall into the streets exception set forth in Section 8542(b)(6).

 Smith argues that *Dean* and *Lockwood* are distinguishable because those cases involved the failure to install guardrails and did not involve wedge curbs. Nevertheless, the injuries suffered by Smith, like the injuries suffered by the plaintiffs in *Dean* and *Lockwood*, result from the motor vehicle traveling off the portion of the roadway intended for travel. Smith does not allege that his injuries were caused by the condition of any portion of Crucible Street that is intended for travel. The wedge curb cannot be said to be any more of a dangerous condition resulting in a reasonably foreseeable injury to Smith than the failure to install guardrails in *Dean* and *Lockwood* were dangerous conditions resulting in reasonably foreseeable injury. *See also Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989) (holding that permitting a strip mine within the Department of Transportation's right-of-way, without warning the public, providing lighting or erecting a guardrail, did not create a dangerous condition within the meaning of the real property exception to sovereign immunity).

There is no merit in Smith's contention that *Dean* and *Lockwood* are distinguishable because the lack of a guardrail was not the most proximate cause of the plaintiffs' injuries in those cases. The slippery road conditions and the driver intoxication were merely concurrent causes of the plaintiffs' injuries in *Dean* and *Lockwood*, just as Manson's violation of the posted speed limit and the loss of control of his vehicle was a concurrent cause of Smith's injuries. Although the Department argued in *Dean* that the real estate exception did not apply because the plaintiff asserted a concurrent cause of her injuries, the Supreme Court expressly rejected that argument. Instead, the outcomes of both *Dean* and *Lockwood* were determined by the court's conclusion that the failure to erect a guardrail did not create a dangerous condition for purposes of immunity.

2. The Sovereign Immunity Act preserves the sovereign immunity of Commonwealth parties except where it is waived by the exceptions set forth in Section 8522. The Sovereign Immunity Act and the Tort Claims Act are to be interpreted consistently because they deal with indistinguishable subject matter. *Dean.*

Likewise, the installation of a wedge curb along Crucible Street did not create a dangerous condition within the meaning of Section 8542(b)(6). The trial court's order is affirmed.[3]

## ORDER

AND NOW, this 6th day of September, 2002, the order of the Court of Common Pleas of Allegheny County is affirmed.

---

**3.** To the extent that Smith raises other issues concerning the City's design or supervision of the construction on Crucible Street, Smith waived these arguments by failing to include them in his motion for post-trial relief. *Terwilliger v. Kitchen*, 781 A.2d 1201 (Pa.Super.2001).