**Menkes v. Fisher**

*Mina Menkes,* pro se.
*Donald B. Scace Jr.,* for defendants.

TILSON, *J.,* November 4, 2009—

FACTS AND PROCEDURAL HISTORY

Appellant, Mina Menkes, appeals from this court's order dated August 7, 2009, which granted appellees', Vivian S. McCardell and Vivian S. McCardell administratrix of the estate of Jeffrey D. Samuelsson deceased, motion for summary judgment.

On February 6, 2004, appellant filed a complaint against several defendants alleging personal injury as a result of a motor vehicle accident that occurred on September 24, 2001. On March 31, 2004, appellant filed a praecipe to reinstate the complaint. On August 24, 2005, Judge William T. Nicholas entered an order sustaining multiple preliminary objections, and thereafter, only appellees Vivian S. McCardell, Vivian S. McCardell administratrix of the estate of Jeffrey D. Samuelsson deceased, and defendant Vanessa Fisher remained. Defendant Vanessa Fisher settled with appellant. On February 13, 2008, Judge Nicholas entered an order providing that defendants are given leave to conduct a second deposition of plaintiff, if defendants so desire . . . and plaintiff is cautioned that a failure to comply with this order may result in the imposition of sanctions, upon defendants' application to the court for hearing. On April 9, 2008, appellees filed a motion to preclude against plaintiff. On October 1, 2008, a hearing was held before Judge Nicholas on appellees' motion for sanctions for

appellant's failure to obey the court order dated February 13, 2008. On October 3, 2008, Judge Nicholas entered an order precluding appellant from testifying at the time of trial pursuant to appelees' motion to preclude. On October 14, 2008, appellees filed a motion for summary judgment. Oral argument was held on appellees' motion for summary judgment on August 7, 2009. There is no record of this proceeding. On August 7, 2009, this court entered an order granting appellees', Vivian S. McCardell and Vivian S. McCardell administratrix of the estate of Jeffrey D. Samuelsson deceased, motion for summary judgment.

On September 9, 2009, appellant filed a notice of appeal. Pennsylvania Rule of Appellate Procedure 903 provides that except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken. Appellant filed her notice of appeal 33 days after this court entered the order on August 7, 2009. Therefore, appellant's appeal should be dismissed.

In addition, appellant failed to timely file a concise statement of matters complained of on appeal as required by the order dated October 5, 2009 and Pennsylvania Rule of Appellate Procedure 1925(b). The order dated October 5, 2009 provides that appellant is directed to file with the office of Prothonotary of Montgomery County a concise statement of matters complained of on appeal within 21 days from the date of docket of this order. This order was docketed on October 6, 2009, and appellant failed to file her concise statement of matters complained

of on appeal by October 27, 2009, 21 days after the order was docketed. Appellant mailed her concise statement of matters complained of on appeal to Judge Tilson's chambers, and it was received on October 28, 2009. Appellant's concise statement of matters complained of on appeal was not filed with the office of Prothonotary of Montgomery County. In addition, appellant's concise statement of matters complained of on appeal violates Pennsylvania Rule of Appellate Procedure 1925(b)(4), as discussed in more detail below and is not coherent in parts. Therefore, appellant's appeal should be dismissed.

Although appellant's appeal should be dismissed pursuant to Pennsylvania Rule of Appellate Procedure 903 and Pennsylvania Rule of Appellate Procedure 1925(b), this court wishes to discuss the merits of this case.

## ISSUES

Appellant filed the instant appeal on September 9, 2009 and raised the following issues in her concise statement of matters complained of on appeal, which was mailed by appellant to Judge Tilson's chambers and received on October 28, 2009, but was not filed with the office of Prothonotary of Montgomery County:

"(1) Why did Judge Arthur's court stenographer George Frye/or substitute stenographer absent from the 'summary judgment hearing'?

"(2) What was Mark Phillips, Esquire sitting next to Donald Scace, Esquire, when no entry of appearance was entered by him? Who is Mark Phillips anyway? Was his function there to further bully the judge to close the

plaintiff's legitimate claims against the defendant. Was he paid off or paid by way of other favors promised to him or whatever law office he is from?

"(3) Why was the plaintiff, Mina Menkes, requested to leave the courtroom/hearing room and told that there was another hearing going to be going on, only to find out later that Donald Scace and the above-mentioned Mark Phillips stayed for a good 10 minutes afterwards in that very courtroom which the plaintiff and her witness (who had been sitting in the public area of the courtroom and had come with her to give her moral support and to make sure nothing funny was going to go on) were requested to leave.

"(4) Why did Judge Tilson indulge in such inappropriate behavior as taking up time from plaintiff's time in the hearing by asking Donald Scace about his metal braces. Is State Farm using this lawyer to try to manipulate the judges to feel sorry for him and to take away focus from a plaintiff's claims against the defendants?

"(5) If Judge Tilson could indulge in a five-minute conversation about the lawyer's medical status, why would he tell the plaintiff that her time was finished and he didn't have all day to hear her arguments?

"(6) Was it appropriate for Judge Tilson to tell the plaintiff that Judge William Nicholas was a wonderful guy and that I should have been grateful for having him as my presiding judge?

"(7) Did Judge Tilson use the fact that he didn't have a court stenographer present to say just any nonsense to the plaintiff?

"(8) Did Judge Tilson have a right to suggest that the fact the plaintiff's mother was 95 years of age, that any matter of care or any manner of death was appropriate? Is that the way he would want to cared for in his older years and is this the way he would want to die?

"(9) Has there been collusion among the parties from beginning to the 'summary judgment' among the defendants and the pressing Judge William T. Nicholas and then Judge Tilson only covering up for his predecessor?

"(10) Why did Judge Nicholas from the very first hearing act like it was a big joke? Did Judge Nicholas facilitate the eventuality of the plaintiff's mother's macabre murder at the hands of 'family members' by facilitating the lies and games played by the defendants when the plaintiff had made her case years before?

"(11) Why did Judge Nicholas grant State Farm's defense attorney Donald Scace his sanction for the plaintiff not being able to speak at trial when the 'deposition' was just a badgering session when the plaintiff was asked the same question 10 times after she had already told the deposing lawyer that she had no clue that the intersection was there and only knew that it even existed/and in fact where she had been hit only after the police report came out three weeks later?

"(12) Did Judge Nicholas know that this was Donald Scace, Esquire way of badgering and agitating the plaintiff knowing she has a brain injury and that this would make her brain go into convulsions and force her to leave the 'deposition' which was only cumulative of informa-

tion already within the defendant's State Farm defense attorney for four years previous already?

"(13) Should the plaintiff been at her mother's side in Florida instead of being intimidated to come to another sham 'hearing/deposition' so that she could make sure that the clueless, malevolent sibling did not torture and batter the plaintiff beloved mother to death?

"(14) Did all the games played by the judge and the defendants prolong, aggravate and make permanent the plaintiff's injury *i.e.,* a life sentence by treating her with such cruelty, contempt and disrespect?

"(15) Why did the judge allow a simple case of a blind intersection in which the plaintiff had the right of way as it was a T intersection at School Rd and Rte 73, be tortured into such a prolonged ridiculous saga with terrible consequences to both her and her mother, dismissing PennDOT and Whitpain Township and then letting State Farm go on and on without making a single offer?

"(16) Why was the plaintiff's motion for 'unclean hands' against State Farm never scheduled for a hearing when in fact, he had made his insured sign lies about the state of the hedges at the corner of Rte 73 and School Rd., when in fact they had half of the hedges cut down even before the lawsuit had been initiated?

"(17) When is State Farm and other defendants going to pay Reparations already, and the plaintiff can throw out all the junk papers that have cluttered her house and her brain and made it even more difficult to do the neces-

sary things a person has to do even with her more limited range due to the head injury sustained at this intersection?

"(18) Why did everyone disregard the evidence presented about the many previous serious accident at this intersection. Do the judge in Montgomery County think that unsafe intersection and brain injuries are a joke?"

## STANDARD

Summary judgment may be entered only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 723 A.2d 174 (1999). The record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

## ANALYSIS

Appellant's concise statement of matters complained of on appeal violates Pennsylvania Rule of Appellate Procedure 1925(b)(4) which provides that: "(ii) The statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the statement" and "(vi) If the appellant in a civil case cannot readily discern the basis for the judge's deci-

sion, the appellant shall preface the statement with an explanation as to why the statement has identified the errors in only general terms. In such a case, the generality of the statement will not be grounds for finding waiver." Appellant's concise statement of matters complained of on appeal does not concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge, but instead, to summarize, identifies appellant's objections to the Judge Nicholas and Judge Tilson's court room behavior, questions Judge Nicholas' ruling on appellees' motion for sanction, questions when defendants will pay reparations, and questions why everyone disregarded the evidence.

On October 1, 2008, a hearing was held before Judge Nicholas on appellees' motion for sanctions for appellant's failure to obey the court order dated February 13, 2008. Appellant testified that at the deposition opposing counsel was badgering her with questions. (N.T. 10/1/08 p. 11.) The court found that appellant left the deposition in the midst of the deposition in violation of the order dated February 13, 2008, and thus on October 3, 2008, Judge Nicholas properly entered an order precluding appellant from testifying at the time of trial pursuant to appellees' motion to preclude. (N.T. 10/1/08 p. 10.) On October 14, 2008, appellees filed a motion for summary judgment.

This court granted appellees' motion for summary judgment because this court found that there are no genuine issues of material fact. *Dean v. PennDOT,* 561

Pa. 503, 507, 751 A.2d 1130, 1132 (2000). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* When the facts are so clear that reasonable minds cannot differ, summary judgment is appropriate. *Cochran v. GAF Corp.,* 542 Pa. 210, 215, 666 A.2d 245, 248 (1995). This court found that because appellant is precluded from testifying at the time of trial, she will not be able to sustain her burden of proving her negligence claim at trial. To establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage. *Martin v. Evans,* 551 Pa. 496, 502, 711 A.2d 458, 461 (1998). The plaintiff has the burden of establishing, by a preponderance of the evidence, that the defendant engaged in conduct that deviated from the general standard of care expected under the circumstances, and that this deviation proximately caused actual harm. *Id.* Appellant cannot meet her burden without her testimony, and as a result of prior orders by Judge Nicholas, appellant was left without any witnesses to present.

## CONCLUSION

For the reasons set forth above, this court's order dated August 7, 2009, which granted summary judgment should be affirmed.