# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Texeira,                      :

             Appellant     :

                      :

        v.              :     No.  997 C.D. 2021

                      :

Commonwealth of Pennsylvania,   :     Submitted:  May 6, 2022

Department of Transportation    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: August 30, 2022

Joseph Texeira (Texeira) appeals from the August 5, 2021 order of the Court of Common Pleas of Monroe County (trial court), which granted the motion for summary judgment filed by the Commonwealth of Pennsylvania Department of Transportation (PennDOT) and dismissed Texeira's complaint. In so doing, the trial court concluded that sovereign immunity shielded PennDOT from liability for Texeira's negligence complaint stemming from an accident which occurred on Interstate 80 (I-80). Upon review, we reverse.

On May 2, 2018, Texeira was seriously injured when his motorcycle hit a pothole on I-80 westbound at mile marker 284, 1/10th of a mile eastbound from Exit 284 in Monroe County, Tobyhanna Township, Pennsylvania. (Complaint at ¶5; Reproduced Record (R.R.) at 7a.) Following the accident, Trooper Craig Dadurka

arrived at the scene. He described the pothole at issue as approximately one-and-a-half to two-feet long, eight inches wide, and a couple of inches deep. (R.R. at 59a.)

On October 7, 2019, Texeira filed a complaint against PennDOT, alleging that the accident was the result of PennDOT's negligence in failing to repair the pothole and/or failing to adequately warn motorists of the pothole. (Complaint at ¶ 11; R.R. at 8a-9a.)

PennDOT filed an answer with new matter to the complaint, denying it was negligent, and raising sovereign immunity as an affirmative defense. (Answer, 12/12/2019, ¶¶ 9, 20-29; R.R. at 14a-21a.) PennDOT further averred that the exception to sovereign immunity set forth in 42 Pa.C.S. §8522(b)(5),[1] concerning "potholes and other dangerous conditions" was not applicable because it did not receive the requisite "actual written notice" of the pothole and if it had received written notice, such notice

---

[1] The "pothole" exception to sovereign immunity provides:

> (b) Acts which may impose liability.--The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> ****
>
> (5) Potholes and other dangerous conditions.--A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that **the claimant to recover must establish** that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that **the Commonwealth agency had actual written notice of the dangerous condition** of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. Property damages shall not be recoverable under this paragraph.

42 Pa.C.S. §8522(b)(5) (emphasis added).

was not received in sufficient time to have fixed the pothole or to have warned Texeira of the dangerous condition. *Id.* ¶ 34; R.R. at 19a.

The deposition of Texeira was taken along with the depositions of the Assistant County Maintenance Manager, Roger Flurer (Flurer), and Trooper Dadurka.

Following the close of discovery, PennDOT filed a motion for summary judgment based on sovereign immunity. (Motion for Summary Judgment, 6/4/2021; R.R. at 27a-29a.) Texeira filed a response in which he alleged that PennDOT had "actual written notice of the dangerous condition posed by the pothole, which caused the accident that injured [him], in sufficient time to have taken measures to protect against the same." (Plaintiff's Response to Defendant's Motion for Summary Judgment, 7/2/2021; R.R. at 79a-80a.)

In opposition to summary judgment, Texeira submitted evidence of six customer care complaints made to a statewide PennDOT telephone hotline from March 20, 2018, through April 4, 2018, which documented the remedial patching work that PennDOT completed in response to these complaints. Assistant County Maintenance Manager for Monroe County, Flurer, was asked about these six complaints at his deposition. (Flurer Dep. at 19-42; R.R. at 110a-33a.) Flurer explained that PennDOT maintains a call center (1-800-FIX-ROADS), where citizens can register complaints regarding the condition of Commonwealth roads. The information provided by the caller is reduced to writing by the call center onto a Customer Service Record. The Customer Service Records are then forwarded to the county PennDOT office responsible for the area in question. *Id.* at 33-34; R.R. at 110a. In this case, the Customer Service Records were forwarded to the Monroe County PennDOT office.

The first Customer Service Record, dated March 20, 2018, indicated that the motorist complained of "pavement conditions" located on I-80 westbound between

3

mile markers 293 and 277. (R.R. at 64a.) The motorist stated: "This entire 15-mile stretch is a driving death trap. Regularly passing 3-4 cars every single day with flat tires[.] I am sure you are aware of this section, but I am only submitting these tickets for a paper trail if my [f]iance and myself happen to snap an axel, blow tires, or blow struts." *Id.* At his deposition, Flurer testified that a portion of the roadway between mile markers 293 and 277 is located "in Carbon County and possibly the next county up." (Flurer Dep. at 23; R.R. at 113a.) After consulting the Customer Service Record, Flurer testified that due to this complaint, patching in this area began on March 27, 2018, and was completed on March 28, 2018, which was prior to the accident. *Id.* at 26; R.R. at 117a.

The second Customer Service Record, dated March 30, 2018, memorialized a motorist's general complaint without regard to a specific pothole or location. The location of the complaint was between mile markers "293 and 272 on [I-]80 in the westbound lane." (R.R. at 65a.) The motorists complained that "[t]he whole westbound lane is covered in potholes and dangerous to drive." *Id.* After inspecting the Customer Service Record, Flurer testified that patching in this area occurred on April 15, 2018, which was prior to the accident. (Flurer Dep. at 29; R.R. at 120a.)

The third Customer Service Record, dated March 30, 2018, concerned "potholes on I-80 westbound, west of Stroudsburg." (R.R. at 66a.)

The fourth Customer Service Record, dated April 4, 2018, documented a motorist's complaint for "potholes" located on all of I-80 East and West from Monroe County to Pike County. (R.R. at 148a.) The motorist stated that he witnessed a car hit a pothole and that the pothole was so big that it threw the car out of its lane. The motorist also stated that "the roads are uneven and broken up" and very dangerous. *Id.*

The fifth Customer Service Record, dated April 4, 2018, documented a motorist's complaint that reported "Blakeslee PA on [I-]80 there are four potholes. 115 Bear Township going from West to East there are multiple potholes throughout the entire Road." (R.R. at 149a.) Regarding this complaint, Flurer testified that he took the complaint to mean that there were four potholes on I-80 around Blakeslee. (Flurer Depo. at 38-39; R.R. at 129a-30a.) When asked whether the potholes described by this customer in this complaint ever existed, Flurer was unable to say because he believed the complaint was "vague" and it did not specify eastbound or westbound or the nearest mile marker. *Id*. at 39; R.R. at 129a. Flurer agreed that the Blakeslee Exit is "right around" mile marker 284, which is where the accident occurred. *Id*. at 36-37; R.R. at 127a-28a. Referencing the information at the bottom of the Customer Service Record, Flurer was able to confirm that patching was scheduled for "this area" and completed on April 11, 2018. *Id*. at 39; R.R. at 13a.

The sixth Customer Service Record, dated April 25, 2018, documented a motorist's complaint for "pavement conditions" who stated: "I-80 east and west bound is becoming un-drivable [due] to the hundreds of potholes in east direction in Monroe County lines. Where is our high tax on gasoline going?" (R.R. at 150a.)

Trooper Dadurka was also deposed. He testified that he regularly patrols the area where the accident occurred, and never saw the pothole in question prior to the accident. He testified that if he had seen it, he would have notified PennDOT. (Dadurka Dep. at 11-12; R.R. at 59a-60a.)

By an Opinion and Order dated August 5, 2021, the trial court granted PennDOT's motion for summary judgment based on sovereign immunity. The trial court specifically held that the claim did not fall within the pothole exception to sovereign immunity, 42 Pa.C.S. §8522(b)(5), because Texeira failed to establish that

5

PennDOT received actual written notice of the pothole that caused his accident. The trial court found that the six Customer Service Records were much too vague regarding the specific locations of the potholes because they were complaints about potholes over large stretches of I-80. (Opinion at 4-8.) The trial court further reasoned that after each of the six complaints were made, the evidence established that the potholes in those areas were repaired prior to the accident. Finally, the trial court found that the six motorists' complaints did not constitute "actual written notice" under 42 Pa.C.S. §8522(b)(5) because the customers' complaints were submitted telephonically, and not in writing. *See* Opinion at 5, 8, (remarking that "nothing was submitted in writing by the complainants themselves" and "none of the complaints were submitted in writing to PennDot as notice").

On appeal,[2] Texeira raises three issues:

1. Whether the telephonic complaints, regarding the subject roadway, made to the PennDOT hotline, which were then reduced to writing and provided to the County Maintenance office, were sufficient to satisfy the requirement of "actual written notice" contemplated by 42 Pa.C.S. §8522(b)(5)?

2. Whether the record evidence was sufficient for the trial court to determine that the areas of roadway in question, which were the subject of motorist complaints, were repaired and/or patched?

---

[2] The standard of review of the grant of summary judgment is *de novo*. *See e.g., Pyeritz v. Commonwealth of Pennsylvania*, 32 A.3d 687, 692 (Pa. 2011). "The scope of review over an order granting summary judgment is "limited to a determination of whether the trial court abused its discretion or committed an error of law." *Bowles v. Southeastern Pennsylvania Transportation Authority*, 581 A.2d 700, 702-03 (Pa. Cmwlth. 1990).

6

3. Whether the motorist complaints, regarding the subject roadway, were sufficiently specific to place the Commonwealth on notice of the hazard posed by the potholes in sufficient time for the Commonwealth to repair them or remediate the hazard?

(Texeira's Br. at 4.)

Texeira first argues that the trial court erred by determining that the motorist complaints, which were received by the PennDOT call center, reduced to writing and provided to the assistant maintenance manager, did not constitute actual written notice to PennDOT of the hazards described therein under 42 Pa.C.S. §8522(b)(5).

The statute requires a plaintiff to establish two elements of notice in order to fall within the pothole exception:

(1) that the Commonwealth agency had actual written notice of the dangerous condition; and (2) that the actual written notice had been given sufficiently prior to the incident giving rise to plaintiff's claim so that the Commonwealth agency had a reasonable opportunity to remedy the situation.

*Stevens v. Department of Transportation*, 492 A.2d 490, 493 (Pa. Cmwlth. 1985).

A plaintiff seeking to come within the "pothole exception" to sovereign immunity, 42 Pa.C.S. §8522(b)(5), must specifically plead and prove sufficient prior written notice of the allegedly dangerous condition of the roadway. *Id*. The alleged possibility of actual written notice is insufficient to satisfy the statutory requirement. *Id*. (inference of actual written notice is insufficient to satisfy statutory standard).

As noted, on at least two occasions in its opinion, the trial court noted that the motorists' complaints were not submitted in writing. This seemed to be significant for the trial court especially since this fact was noted in its conclusion justifying the grant of summary judgment in favor of PennDOT. We agree with Texeira that the trial

7

court erred to the extent it granted summary judgment on the grounds that **the motorists' complaints** must be in writing to constitute "actual written notice" to PennDOT under 42 Pa.C.S. §8522(b)(5).

Again, 42 Pa.C.S. §8522(b)(5) provides in relevant part: "[T]he claimant to recover must establish that . . . the Commonwealth agency had actual written notice of the dangerous condition of the highway. . . ." The plain language of 42 Pa.C.S. §8522(b)(5) makes clear that PennDOT must have had actual written notice of the pothole. There is nothing in the statute which requires that the motorist complaint must be in writing. The six telephonic complaints were reduced to writing onto Customer Service Records, which were then forwarded to the specific PennDOT field office responsible for maintenance of I-80 in Monroe County. We conclude those Customer Service Records constituted actual written notice to the Commonwealth agency responsible for repairing those potholes, *i.e.*, the Monroe County PennDOT office. Moreover, it was PennDOT that created the telephone hotline, 1-800-FIX-ROADS, as the system for motorists to report, and for PennDOT to learn of, hazardous potholes. Given that PennDOT created and publicized the hotline specifically as the means to learn of those hazards, it seems unfair for PennDOT to now argue that the very system it put into place to receive notice of potholes does not constitute actual written notice under 42 Pa.C.S. §8522(b)(5). Accordingly, we conclude that the trial court erred when it granted summary judgment on the ground that **the motorists' complaints** were not in writing.

Nevertheless, because the trial court did not base its decision entirely on this ground, it does not end the inquiry or necessarily compel reversal. The trial court also granted summary judgment on the grounds that (1) the Customer Service Records were not specific enough to identify the actual pothole that caused the accident, and (2)

8

the undisputed evidence established that the potholes that were the subject of the six Customer Service Records were patched prior to the accident and, therefore, could not have caused it. For the reasons that follow, we conclude that trial court erred in granting summary judgment in favor of PennDOT.[3]

In *Pallante v. City of Philadelphia*, 575 A.2d 980 (Pa. Cmwlth. 1990), the plaintiff fell into a pothole while crossing Chestnut Street, a state highway in Center City, Philadelphia. She sued the Commonwealth for personal injuries, claiming that the Commonwealth was negligent in its repair and maintenance of the street. At trial, the plaintiff produced the testimony of the Commonwealth's maintenance inspector who was charged with inspecting the Chestnut Street area and recording potholes and other dangerous conditions in a log entry book. The inspector confirmed three log entries, one in 1979 and two in 1982, which established that the Commonwealth had actual notice of defects "near the Eighth and Chestnut Streets intersection." *Id*. at 981. Following the rendering of a verdict for the plaintiff, the trial court entered judgment notwithstanding the verdict (n.o.v.) after determining that the evidence presented could not establish the requisite notice because those recorded defects, in the trial court's opinion, did not match the exact location where the plaintiff fell, which was slightly away from the intersection. On appeal, this Court reversed. We held that the trial court's analysis of the evidence amounted to fact-finding and invaded the jury's

---

[3] Summary judgment may be granted only in those cases where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Commission*, 723 A.2d 174, 176 (Pa. 1999). On a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved in his favor. *Id*. The question of whether the Commonwealth is entitled to summary judgment is based purely upon the statutory construction of the applicable immunity provisions. *Dean v. Pennsylvania Department of Transportation*, 751 A.2d 1130, 1132 (Pa. 2000).

province to determine the credibility of witnesses and draw inferences from the evidence. *Id*. We explained that the jury was free to accept none, all, or any part of the inspector's testimony, including the log entry. We reasoned that the jury could have believed the inspector's log entry that there was a pothole but disbelieved him as to its exact location or whether it was repaired prior to the plaintiff's injury in 1982. *Id*. The evidence, we explained, could lead one to reasonably infer that the pothole of which the inspector spoke was the same one into which the plaintiff fell. Accordingly, we concluded that the trial court erred in entering judgment n.o.v.

In *Walthour v. Department of Transportation*, 31 A.3d 762 (Pa. Cmwlth. 2011), this Court determined that a letter from a state senator to PennDOT, which PennDOT subsequently acknowledged, complaining of "the condition of Route 837 in the City of Duquesne," was sufficient to place the Commonwealth on notice for purposes of the statute, even though no specific pothole was identified. There, the plaintiff, a motorcycle passenger, claimed that she was injured when a motorcycle she was riding hit a pothole on State Route 837 in the City of Duquesne. The plaintiff sued PennDOT, claiming that PennDOT had received prior written notice of the dangerous condition in the state senator's letter. *Id*. at 763. In reply, PennDOT sent a letter to the senator, acknowledging that it would have liked to make major improvements to that section of roadway but had been unable to secure the necessary funding. *Id*. PennDOT filed a motion for summary judgment, which the trial court granted based on its conclusion that general allegations of road conditions are insufficient to constitute notice under the pothole exception. Noting that the senator's letter made no reference to potholes and did not articulate a specific section of State Route 837 that would coincide with the area where the accident occurred, the trial court concluded that the actual written notice requirement of section 8522(b)(5) was not met. *Id*. at 764.

10

On appeal, we reversed. Viewing the record in a light most favorable to the plaintiff, we were unable to conclude that the senator's letter was insufficient notice as a matter of law. We concluded that the letters exchanged between the senator and PennDOT created a sufficient material factual dispute to allow the plaintiff to survive a motion for summary judgment based on sovereign immunity. We explained:

> The sufficiency of the notice, in this case, is a material fact that is disputed, and will be determined after a trier of fact considers whether [PennDOT] would have been on notice of the dangerous condition alleged to have caused or contributed to [the plaintiff's] injuries upon a reasonable inspection of the section of State Route 837 to which Senator Logan's Letter refers. *See, e.g., Department of Transportation v. Patton*, [] 686 A.2d 1302, 1305 ([Pa.] 1997) (concluding, in a case involving the notice requirement for an alleged dangerous condition of a highway under Section 8522(b)(4) of the [Judicial Code], that the question whether [PennDOT] had "notice of a dangerous condition and thus should have known of the defect, *i.e.*, the defect was apparent upon reasonable inspection, is a question of fact" and that "[a]s such, it is a question for the jury, and may be decided by the court only when reasonable minds could not differ as to the conclusion.") Because this material fact is disputed, it is a question for the jury and the trial court's grant of summary judgment was in error.

*Id.* at 763.

Here, the "hazardous condition" at issue was a large pothole located in the "right lane of [I-80] westbound at mile marker 284 in Tobyhanna Township." (Compl., ¶5; R.R. at 7a.) It is undisputed that Blakeslee is at mile marker 284 and that the accident occurred one-tenth of a mile from the Blakeslee Exit. As proof of notice, Texeira submitted Customer Service Records, which establish that PennDOT received notice of the dangerous conditions reported.

11

As in *Pallante*, there are material issues of fact as to (1) whether the Customer Service Records were sufficiently specific to provide the necessary statutory notice of the dangerous condition that caused Texeira's injury; and (2) whether the potholes reported were patched prior to the accident. While five of the six Customer Service Records involved generalized complaints regarding multiple potholes on large sections of I-80, the fifth Customer Service Record described a dangerous condition in the specific area where Texeira was injured, *i.e.*, I-80 in Blakeslee. According to *Pallante* and *Walthour*, it was unnecessary for Texeria to prove with certitude that PennDOT had notice of the actual pothole on I-80 that caused his injury. It is sufficient to establish that PennDOT had notice of the dangerous condition in the area where the accident happened. It is for the jury to decide whether, after a reasonable inspection of the section of I-80 identified in the fifth Customer Service Record, PennDOT would have been on notice of the dangerous condition alleged to have caused or contributed to the accident. *Walthour*.

As to whether the potholes described in the fifth Customer Service Record were repaired prior to the accident, we disagree with the trial court that the undisputed evidence established that this was the case. The only evidence in the record was the Customer Service Record itself and Flurer's testimony concerning the record. On the one hand, Flurer testified that the Blakeslee complaint was vague in its description of the specific location of the four potholes. On the other hand, he was certain, based on the information noted on the Customer Service Record, that the potholes complained of were repaired. This Court finds it troubling that the trial court determined that the complaint was insufficiently specific as to location for purposes of written notice to PennDOT but was specific enough for the court to determine that the areas had been

12

patched. As in *Pallante* and *Walthour*, we believe it should be for the trier of fact to reconcile this evidence, and to accept none, all, or any part of Flurer's testimony.

This case is distinguishable from *Detweiler v. Commonwealth Department of Transportation* (Pa. Cmwlth., No. 2027 C.D. 2015, filed Mar. 30, 2016),[4] where we held that a travel advisory was insufficient as a matter of law to establish that PennDOT had actual written notice of the pothole at issue. In *Detweiler*, the pothole which caused the accident was not within the parameters mentioned in the travel advisory. Here, the pothole at mile marker 284 was within the relevant sections of I-80 covered in the complaint about four potholes on I-80 in Blakeslee. In this regard, the case is more akin to *Pallante* and *Walthour*.

Accordingly, the trial court's decision to grant PennDOT's motion for summary judgment on the basis of sovereign immunity was erroneous. The trial court is reversed.

_____

PATRICIA A. McCULLOUGH, Judge

---

[4] Although not binding precedent, unreported decisions may be cited for persuasive value pursuant to section 414(a) of this Court's internal operating procedures. 210 Pa. Code §69.414(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Texeira,      :
      Appellant  :
           :
    v.       :  No. 997 C.D. 2021
           :
Commonwealth of Pennsylvania, :
Department of Transportation  :

## ***ORDER***

AND NOW, this 30th day of August, 2022, the August 5, 2021 order of the Court of Common Pleas of Monroe County is hereby REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge