Marc PAGE, Appellant

v.

CITY OF PHILADELPHIA and Pennsylvania Department of Transportation.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 4, 2011.

Decided July 18, 2011.

Kenneth M. Rodgers, Philadelphia, for appellant.

Alan C. Ostrow, Divisional Deputy City Solicitor, Philadelphia, for appellee City of Philadelphia.

Claudia M. Tesoro, Senior Deputy Attorney General, Philadelphia, for appellee Department of Transportation.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Appellant Marc Page (Page) appeals from two orders of the Court of Common Pleas of Philadelphia County (trial court), both dated July 15, 2010. By those orders, the trial court granted motions for summary judgment filed by the City of Philadelphia (City) and the Pennsylvania Department of Transportation (DOT). For the reasons that follow, we affirm.

On June 30, 2009, Page filed a complaint against the City and DOT, averring that he sustained serious injuries on February 23, 2008, when he lost control of his car while driving on the 1100 Block of Allegheny Avenue in Philadelphia. (Reproduced Record (R.R.) at 18r.) Page averred that he lost control due to black ice caused by the "melt and refreeze" of improperly removed snow and ice from the highway. (*Id.*)

In response, DOT filed a motion for summary judgment, alleging that Page's claim failed to state a cause of action against DOT. DOT alleged that it was not responsible for the removal of snow at that location because it had an agreement with the City for snow removal of state designated highways.[1] (*Id.* at 52r.) DOT also

---

1. The contract provides in pertinent part:
 The MUNICIPALITY shall undertake and accomplish the required snow and ice clearance together with the application of anti-skid and/or de-icing materials for the State Highways, including bridges and their approaches, as indicated in Exhibit "A" attached to and made part of this agreement.

argued that Page's alleged accident was caused by a defect *on* the property, not a defect *of* the property, and, the accident did not fit within any exception to sovereign immunity set forth in what is commonly referred to as the Sovereign Immunity Act.[2],[3] (*Id.* at 249r.)

The City also filed a motion for summary judgment, alleging that at the time of Page's accident, there was a snow removal agreement in place between the City and DOT, whereby the City agreed to remove ice and snow from certain state highways, including Allegheny Avenue. (*Id.* at 4r.) The City maintained that it

had no common law duty to remove ice and snow from the street, and, therefore, the City was not liable for the condition of a street once the roadway was adopted as a state highway. Further, the City contended that municipalities can be responsible only for a condition of the street that derives, originates, or has as its source the street itself, and Page's claim regarding the removal of snow and ice from the highway does not fall within the "streets exception" to governmental immunity under what is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act).[4]

(Attachment "A" includes State Route 2016 designated by its local name of Allegheny Avenue.)

The agreement further provides:

The MUNICIPALITY shall perform all work in accordance with all applicable PennDOT specifications ("Publication 408"), policies and procedures set forth in the PennDOT MORIS Highway Maintenance Foreman Manual ("Publication 113") and the PennDOT Maintenance Manual ("Publication 23")....

2. 42 Pa.C.S. §§ 8521–8528.

3. Section 8522(b) of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b), provides in pertinent part:

(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

(5) Potholes and other dangerous conditions.—A dangerous condition of highways under the jurisdiction of a Com-

monwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

The Judicial Code distinguishes between Commonwealth parties and local agencies. Sovereign immunity applies to the former, while governmental immunity applies to the latter. *Simko v. County of Allegheny*, 869 A.2d 571, 574 n. 4 (Pa.Cmwlth.2005), *appeal denied*, 587 Pa. 703, 897 A.2d 462 (2006).

4. 42 Pa.C.S. §§ 8541–8542. Section 8542(b)(6)(ii) of the Tort Claims Act, relating to a local agency's streets, identifies the following as acts of a local agency or its employees that may result in the imposition of liability on a local agency, as follows:

(6) *Streets.*—(ii) A dangerous condition of streets owned or under the jurisdiction of Commonwealth agencies, if all of the following conditions are met:

(A) The local agency has entered into a written contract with a Commonwealth agency for the maintenance and repair by the local agency of such streets and the contract either:

(i) had not expired or been otherwise terminated prior to the occurrence of the injury; or

Page presented the report of Richard E. Daniels, a professional engineer, who evaluated whether the snow and ice removal practices of the City complied with safe engineering practice. (*Id.* at 332r.) Mr. Daniels testified that he conducted an investigation of the incident roadway. His evaluation of the incident circumstances revealed that the existence of ice at the incident location was consistent with a failure of the City to apply uniformly and effectively salt to the roadway. (*Id.* at 332r–36r.) Mr. Daniels reported that had the City applied a uniform and effective application of salt to the roadway, the ice would have melted and drained away from the area of the incident in a manner similar to other areas of the roadway. (*Id.*)

In granting DOT's motion for summary judgment, the trial court concluded that the real estate exception to the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4), did not apply because Page did not prove that the black ice derived or originated from, or had as its source Allegheny Avenue itself. (*Id.* at 326r.) In granting the City's motion, the trial court similarly concluded that Page did not prove that the black ice constituted a dangerous condition of a street and derived or originated from Allegheny Avenue or had Allegheny Avenue as its source. (*Id.* at 329r.) Finally, as to Page's argument that summary judgment was premature due to a genuine issue of material fact, the trial court noted that the existence of a snow and ice removal contract between DOT and the City was not a genuine issue. (*Id.* at 328r.) The trial court rationalized that no reasonable jury, faced with the evidence presented, could have concluded anything other than that the contract existed, and, as a result, there was no error in granting DOT's summary judgment motion. (*Id.* at 328r.)

Page appealed the trial court's orders, raising the following issues for our review: [5]

1. Whether DOT, under Sections § 8522(b)(4) and (5) of the Sovereign Immunity Act, has an obligation to effectively remove ice and snow from its designated highways in such a way that it does not create a dangerous condition in the removal of such snow, causing injury to a motorist on the highway?

2. Whether the City was entitled to summary judgment where Page sought to offer expert evidence to establish the City failed to properly remove ice and snow from a highway under its care, custody, and control causing a condition which in turn caused an injury to Page, a motorist on the highway?

3. Whether the City was entitled to grant of summary judgment where Page sought to establish liability under Section 8542(b)(6)(ii) of the Tort Claims Act, for removing ice and snow in an improper manner, causing a condition of melt

(ii) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.

(B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.

(C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

5. This Court's scope of review of a grant of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Smith v. Dep't of Transp.*, 700 A.2d 587, 590 (Pa.Cmwlth. 1997).

and refreeze, which subsequently injured a motorist using the state-designated highway which the City had contracted to maintain by removal of ice and snow?

## A. DOT's Summary Judgment Motion

■ We begin by addressing Page's argument that the trial court erred in entering summary judgment for DOT because the black ice was a dangerous condition that falls within the exceptions established in Sections 8522(b)(4) and (5) of the Sovereign Immunity Act. Specifically, Page argues that he has a cause of action against DOT due to the negligent conduct of DOT's designee in improperly removing the ice and snow from Allegheny Avenue, which created a foreseeable, dangerous condition consisting of the artificial accumulation of black ice.

Summary judgment may be granted only in those cases where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pa. State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 176 (1999). On a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved his favor. *Id.* The question of whether the Commonwealth is entitled to summary judgment is based purely upon the statutory construction of the applicable immunity provisions. *Dean v. Dep't of Transp.*, 561 Pa. 503, 508, 751 A.2d 1130, 1132 (2000).

■ Sovereign immunity is only waived for damages arising out of a negligent act where the common law or a statute would permit recovery if the injury were caused by a person not protected by sovereign immunity and the cause of action falls under one of the specifically enumerated exceptions to immunity. Section 8522 of the Sovereign Immunity Act, 42 Pa.C.S. § 8522. Initially, Page must meet the threshold requirement that the alleged damages would be recoverable under the common law or a statute against a party not protected by sovereign immunity by proving the following elements of negligence: (1) the defendant's duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Talarico v. Bonham*, 168 Pa.Cmwlth. 467, 650 A.2d 1192, 1195–96 (1994).

■ We disagree that Page established that DOT owed a duty or obligation to him. "[I]n reviewing whether a duty exists the court must determine the relationship between the parties and balance the various competing interests and costs involved in providing the requested protection. This requires a determination of the probability of harm in conjunction with the inconvenience of acting to prevent that harm." *Mindala v. Am. Motors Corp.*, 518 Pa. 350, 358, 543 A.2d 520, 524 (1988). DOT is statutorily charged with the exclusive responsibility for repairing and maintaining state highways under Section 704 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. § 670–407. The State Highway Law, therefore, imposes a duty on DOT to the general public to clear snow and ice on state highways. *Huber v. Cmwlth.*, 122 Pa.Cmwlth. 82, 551 A.2d 1130, 1133 (1988), *appeal denied*, 525 Pa. 637, 578 A.2d 931 (1989). In addition, DOT owes a general duty to those using its real estate to maintain the condition of the property under its jurisdiction so that it is safe for the activities for which it is regularly used, intended to be used, or reasonably foreseen to be used. *Snyder v. Harmon*, 522 Pa. 424, 434, 562 A.2d 307, 312 (1989). Moreover,

this Court has determined that just because DOT has a *general* statutory duty to repair and maintain state highways pursuant to the State Highway Law, it does not create a cause of action for a *specific* plaintiff. *Huber*, 551 A.2d at 1134. (Emphasis added.)

Here, Page is asking us to conclude that the duties of DOT described above include a specific duty owed to Page to clear or treat natural accumulations of snow and ice. We disagree. In *Huber*, we concluded that the State Highway Law does not impose a specific statutory duty on DOT to protect an individual from the natural accumulations of ice and snow resulting from a snowstorm, and no such duty exists at common law. *Id.* We cannot, therefore, interpret DOT's general duty of snow removal to include a specific duty to protect Page from the harm he suffered in this case. "A contrary conclusion would allow DOT to avoid liability for leaving roads unplowed but expose DOT to liability whenever it attempts to clear these same roads." *Miller v. Kistler*, 135 Pa.Cmwlth. 647, 582 A.2d 416, 418 (1990), *appeal denied*, 527 Pa. 656, 593 A.2d 427 (1991). Because Page failed to meet the threshold requirement of establishing that the alleged damages would be recoverable under the common law or a statute against a party not protected by sovereign immunity, DOT's sovereign immunity is not waived.

■ Even if we were to assume, for purposes of argument only, that DOT owed a duty to Page as an individual, "a Commonwealth agency may have breached a duty owed yet not be liable unless the breach is coincidental with an exception" to the Sovereign Immunity Act. *Bendas v. Twp. of White Deer*, 531 Pa. 180, 183, 611 A.2d 1184, 1186 (1992). To defeat the defense of sovereign immunity, Page must also establish that his claim falls within

one of the nine enumerated exceptions to sovereign immunity set forth in Section 8522(b) of the Sovereign Immunity Act. *Dean*, 561 Pa. at 508, 751 A.2d at 1132. Because of the legislature's clear intent to insulate government from exposure to tort liability, the exceptions to sovereign immunity must be strictly construed. *Id.*

Page appears to argue that the exceptions to sovereign immunity in both Sections 8522(b)(4) and (5) of the Sovereign Immunity Act are applicable, as they waive immunity for "dangerous conditions" of Commonwealth real estate and highways. Here, Page contends that as a result of the City's negligent removal of snow and ice, an artificial condition—*i.e.*, black ice—formed which caused Page's injuries.

In *Snyder*, the Pennsylvania Supreme Court considered the meaning of the real estate exception in the Sovereign Immunity Act in the context of a Commonwealth roadway. The plaintiffs argued that DOT was negligent in failing to install lighting or physical barriers to warn the public of a deep chasm in close proximity to its highway. *Snyder*, 522 Pa. at 428, 562 A.2d at 309. In its analysis, the Pennsylvania Supreme Court focused on the critical word "of" in the statutory language. In interpreting the statutory language, the Supreme Court opined: "The unambiguous language of Section 8522(b)(4) in relevant part provides 'A dangerous condition of Commonwealth agency real estate....' These key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Id.* at 433, 562 A.2d at 311.

In *Jones v. Southeastern Pennsylvania Transportation Authority*, 565 Pa. 211, 772 A.2d 435 (2001) (referring to *Snyder*, 522 Pa. at 433, 562 A.2d at 311), our Supreme Court attempted to clarify further the framework for analyzing whether the

presence of a substance or an object on Commonwealth property satisfies the terms of the real estate exception set forth in the Sovereign Immunity Act. The Supreme Court opined that the issue was one of statutory construction governed by the Statutory Construction Act, 1 Pa.C.S. §§ 1901–1991, and that Section 8522(b)(4)'s language and the statutory scheme controlled. *Jones,* 565 Pa. at 223, 772 A.2d at 442. Rejecting the "on/of distinction" advanced by some courts, the Supreme Court concluded that a claim for damages for injuries caused by a substance or an object on Commonwealth real estate must allege that the dangerous condition "derived, originated or had as its source the Commonwealth realty itself, if it is to fall within the Sovereign Immunity Act's real estate exception." *Id.* at 223–25, 772 A.2d at 442–43. The Supreme Court rationalized that "assuming all other requirements of the statutory exception at 42 Pa.C.S. § 8522(b)(4) are met, the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, maintenance, repair or design." *Id.* at 225, 772 A.2d at 443–44. The Supreme Court applied a much narrower interpretation to the Sovereign Immunity Act's real estate exception as compared to the general liability for failure to maintain premises that could be imposed on local political subdivisions. *Id.* at 226, 772 A.2d at 444.

On appeal, Page relies on *Commonwealth v. Weller,* 133 Pa.Cmwlth. 18, 574 A.2d 728 (1990), in which our Court concluded that DOT's sovereign immunity was waived when an artificial condition or defect of the land itself caused an injury to occur. In *Weller,* the facts establish that DOT plowed snow so that it formed a ramp over a berm and guardrail, which decedent's vehicle ascended. *Id.* at 729.

*Weller,* however, is inapplicable to the situation now before this Court for the reasons discussed by this Court in *Miller.*

In *Miller,* we specifically distinguished between the type of situation involving a *natural* accumulation of ice and snow that resulted after a roadway was plowed from the type of situation in *Weller,* where snow was piled up to form a ramp, thereby constituting an *artificial* accumulation which rendered the installation of the guardrail ineffective. We concluded that DOT cannot be held liable for the accumulation of snow or ice as a result of improper plowing. *Miller,* 582 A.2d at 418. In so doing, we rejected the plaintiff's argument that improper plowing by DOT "created an artificial accumulation of snow and ice" on a sidewalk which caused the plaintiff's injuries. *Id.* Relying on our decision in *Vitelli v. City of Chester,* 119 Pa. Cmwlth. 58, 545 A.2d 1011 (1988), we reasoned that plaintiff incorrectly characterized the accumulation of snow and ice as an "artificial condition." *Id.* We explained:

> In *Vitelli,* . . . , we held that "[s]hoveled snow is a natural incident of the snowfall which cannot be separated from the snowfall itself. The fact that snow has been shoveled into the street does not change its character from 'natural' to 'artificial.'" Although *Vitelli* was decided under Section 8542 of the Judicial Code, 42 Pa.C.S. § 8542 (relating to governmental immunity), this Court, by implication, has extended the reasoning of *Vitelli* to cases arising under Section 8522 (relating to sovereign immunity). Furthermore, the Supreme Court has held that sovereign immunity is waived pursuant to Section 8522(b)(4) only when it is alleged that the artificial condition itself caused the injury to occur. Because the reasoning of *Vitelli* also applies to the real property exception to sovereign immunity, 42 Pa.C.S.

§ 8542(b)(3), we hold that any improper plowing by DOT did not create an artificial condition for which DOT can be held liable. A contrary conclusion would allow DOT to avoid liability for leaving roads unplowed but expose DOT to liability whenever it attempts to clear these same roads.

*Id.* (citations omitted).

Here, the trial court concluded that Page neither alleged nor presented any evidence that the black ice on Allegheny Avenue derived or originated from, or had as its source Allegheny Avenue itself. (R.R. at 328r.) This Court in *Miller* specifically concluded that improper plowing does not create an artificial condition for which DOT can be held liable under Section 8522(b)(4) of the Act, *id.*, as opposed to *Weller*, where our Court concluded that the accumulation of ice and snow which caused the accident was an artificial condition created by DOT's negligent conduct in creating an artificial accumulation allowing decedent's car to vault the guardrail. *Weller*, 574 A.2d at 729. We believe that the same analysis applies with equal force to the natural formation of ice or accumulation of snow following DOT's treatment of the roadway with chemicals (as opposed to plowing). We conclude, therefore, as a matter of law that the exception to sovereign immunity under Section 8522(b)(4) is not applicable.[6] The trial court's entry of summary judgment in favor of DOT was proper in this case.

Alternatively, Page argues that it was premature for the trial court to grant DOT's summary judgment motion until the City acknowledged on the record that it was indeed responsible under a contract for snow and ice removal. The evidence establishes that both parties entered into an agreement for snow removal on state highways within the City. (R.R. at 52r.) In the City's motion for summary judgment, the City admitted that there was a snow removal agreement between the City and DOT. (*Id.* at 4r.) Also, DOT admits in its motion for summary judgment that there was an agreement with the City to remove snow on state designated highways. (*Id.* at 250r.) Moreover, the record also contains the actual agreement between the parties. (*Id.* at 52r–57r.) Upon review of the record, we conclude the trial court was not wrong in concluding that the existence of a contract between the City and DOT was not a genuine issue of material fact in dispute.

## B. The City's summary judgment motion

■ Next, we address Page's argument that the City is liable under Section

---

**6.** To the extent that Page attempts to establish that the exception to sovereign immunity under Section 8522(b)(5) of the Sovereign Immunity Act is applicable, we must also disagree. Page's argument regarding Section 8522(b)(5) is not well-developed and fails to analyze all the language of that section. Page appears to suggest that if the black ice was not an "artificial condition" under Section 8522(b)(4), then the condition must have been created by natural elements such that it constituted a "dangerous condition" under Section 8522(b)(5). We agree, however, with DOT that even if we were to assume that the black ice was "created by natural elements," a patch of black ice is not "similar" to a pothole or sinkhole. *See* Section 8522(b)(5) of the Sovereign Immunity Act. Black ice on a roadway is inherently transitory, as opposed to potholes or sinkholes that will not melt away or disappear and that must be filled or repaired. Furthermore, under Section 8522(b)(5), DOT cannot be held liable for injuries due to potholes, sinkholes, or "similar conditions" unless the plaintiff can prove that DOT had actual, advance, written notice in time to take protective measures. *See Cressman v. Dep't of Transp.*, 114 Pa.Cmwlth. 348, 538 A.2d 992, 994 (1988). Simply put, Page cannot meet the requirement of written notice, and, therefore, Section 8522(b)(5) of the Sovereign Immunity Act also does not apply here.

8542(b)(6)(ii) of the Tort Claims Act for removing snow and ice in an improper manner causing Page's injuries. Page contends that he has stated a cause of action that brings him within an exception to the City's governmental immunity. Specifically, Page maintains that Section 8542(b)(6)(ii) of the Tort Claims Act, pertaining to streets, should apply to ice and snow removal undertaken by the City because the City's negligent removal of the snow and ice on Allegheny Avenue created a dangerous condition of the street. Page also contends that the legislature intended the City to be responsible for the negligent performance of a maintenance contract.

Like the Sovereign Immunity Act, the Tort Claims Act in Section 8541 raises the bar of immunity, but not absolutely. Under Section 8542 of the Tort Claims Act, liability for damages on account of an injury to person or property will be imposed on a local agency if two (2) conditions are met and if the injury occurred as a result of one of eight delineated acts. The two threshold conditions set forth in Section 8542(a) of the Tort Claims Act are:

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts in subsection (b):

(1) The damages would be recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under Section 8541 ... and

(2) The injury was caused by negligent acts of the local agency or an employee thereof acting within the scope of

his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, 'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

Only if both of these conditions are satisfied can Page's case proceed for a determination as to whether the acts complained of come within one of the enumerated exceptions to the general rule of governmental immunity.

 Exceptions to governmental immunity in Section 8542(b) of the Tort Claims Act must be narrowly construed in accordance with our Legislature's intent to protect local agencies from tort liability. *Mascaro v. Youth Study Ctr.*, 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987). Further, a municipality has no common law duty to remove "natural" snow and ice from its streets. *Walinsky v. St. Nicholas Ukrainian Catholic Church*, 740 A.2d 318, 322 (Pa.Cmwlth.1999). "The fact that snow has been shoveled ... does not change its character from 'natural' to 'artificial.'" *Id.* However, liability may be imposed where a plaintiff pleads and proves that the presence of the slippery substance on the government property was caused by improper design, construction, deterioration, or inherent defect of the real estate itself. *Finn v. City of Phila.*, 541 Pa. 596, 605, 664 A.2d 1342, 1346 (1995).

Page relies upon the opinion of the Pennsylvania Supreme Court in *Kilgore v. City of Philadelphia*, 553 Pa. 22, 717 A.2d 514 (1998), in which a genuine issue of material fact precluded the City's motion for summary judgment where it was alleged that the driver of a motorized luggage tug lost control.[7] Here, Page maintains that DOT's designee, the City, had

---

7. In *Kilgore,* the plaintiff averred that the driver lost control of the tug because of accumulated ice and snow on the City's airport

roadway. *Kilgore,* 553 Pa. at 28, 717 A.2d at 517. Specifically, the plaintiff in *Kilgore* alleged that the City's failure to remove ice and

notice of the snowstorm on February 22, 2008, and that it ordered its team to clear the streets by plowing and applying de-icer. Page relies on his expert's report, which provides that the existence of the ice at the accident location was consistent with a failure of the City to uniformly and effectively apply salt to the roadway, and, thus, the City is liable pursuant to *Kilgore.* (R.R. at 336r.)

*Kilgore* is distinguishable from the instant case. In *Kilgore,* this Court imposed liability on the City pursuant to Section 8542(b)(3) of the Tort Claims Act,[8] commonly referred to as the real property exception to governmental immunity, relating to the care, custody, and control of the real property.[9] *Kilgore,* 553 Pa. at 28, 717 A.2d at 517. In contrast, Page invokes Section 8542(b)(6)(ii) of the Tort Claims Act, the local agency streets exception to governmental immunity, relating to a dangerous condition of the streets. Page does not argue that the City was negligent in the care, custody or control of real property; rather, Page argues that the City's negligent attempt at snow removal created a condition that ultimately caused Page's injury. Moreover, the plaintiff in *Kilgore* alleged that the City was negligent for failing to act to remove snow; here, the record indicates that the City did act by salting Allegheny Avenue. (R.R. at 207r.)

Upon review, we find that there is no guiding precedent in either the Pennsylvania Supreme Court or this Court applying Section 8542(b)(6)(ii) of the Tort Claims Act to a similar set of circumstances. Further, the Sovereign Immunity Act and the Tort Claims Act are to be interpreted consistently because they deal with indistinguishable subject matter. *Smith v. Manson,* 806 A.2d 518, 520 n. 2 (Pa. Cmwlth.2002). Moreover, in this case, relevant sections of both the Sovereign Immunity Act and the Tort Claims Act refer to a dangerous condition in conjunction with the Commonwealth's realty highways or streets. Here, Page merely argues that the snow and ice was improperly removed and not that the black ice was caused by the improper design, construction, deterioration or inherent defect of the street itself. Page did offer the testimony of his expert, Mr. Daniels, that the City failed to apply uniformly and effectively salt to the roadway. (*Id.* at 335r.) The trial court, however, determined that Mr. Daniels failed to prove that the black ice derived or originated from, or had as its source Allegheny Avenue itself and granted both the City's and DOT's motions for summary judgment. (*Id.* at 328r.) Therefore, we cannot conclude that an exception to governmental immunity through Section 8542(b)(6)(ii) of the Tort Claims Act was applicable to the City. Accordingly, as

---

snow following an earlier storm was related to the "care, custody and control of real property in possession of the local agency," 42 Pa.C.S. § 8542(b)(3), and was a direct cause of the accident. *Id.* at 28, 717 A.2d at 517.

8. Section 8542(b)(3) of the Tort Claims Act, relating to real property, identifies the following as acts of a local agency or its employees that may result in the imposition of liability on a local agency, in pertinent part, as follows:

> The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury

sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

> . . .
> (iii) streets; or
> (iv) sidewalks.

9. In *Burns v. Crossman,* 740 A.2d 773, 774 (Pa.Cmwlth.1999), relying on our decision in *Miller,* we similarly held that no cause of action against the City can be maintained based on improper plowing of snow pursuant to the exception in Section 8542(b)(3) of the Tort Claims Act.

Page has failed to present a genuine issue of material fact, the City is entitled to judgment as a matter of law, and we conclude that the trial court did not err in granting the City's motion for summary judgment.

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 18th day of July, 2011, the orders of the Court of Common Pleas of Philadelphia County, dated July 15, 2010, are hereby AFFIRMED.