# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert DeWitt, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1345 C.D. 2024 |
| | : | |
| Bedford County Airport Authority, | : | |
| Jason Hochstetler, Juanita | : | |
| Hochstetler, and Hochstetler | : | |
| Construction | : | Argued: September 11, 2025 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge (P.)
HONORABLE MATTHEW S. WOLF, Judge

## <u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE WOLF                                                    FILED: November 10, 2025

Robert DeWitt (DeWitt) appeals from the August 5, 2024 order of the Court of Common Pleas of Bedford County (trial court), granting Bedford County Airport Authority's (the Authority), Jason Hochstetler's and Juanita Hochstetler's (the Hochstetlers), and Hochstetler Construction's (collectively with the Authority and the Hochstetlers, Possessors) motions for summary judgment. In reviewing the record, we conclude that the trial court was correct in granting summary judgment for Possessors on the basis that DeWitt was a trespasser and therefore his pleadings alleging negligence did not raise an actionable claim against Possessors. Therefore, we affirm the trial court.

# I. BACKGROUND

The matter before us arose as a premises liability action brought by DeWitt after he slipped and fell at 675 Belden Road, Bedford, Pennsylvania, 15522 (the Premises). The Premises are owned by the Authority and leased to the Hochstetlers who used the Premises as a residence. Reproduced Record (R.R.) 313a-23a. Hochstetler Construction also performs some back-office functions at the Premises. *Id.* at 347a-48a. Hochstetler Construction customers did not go to the Premises. *Id.* at 370a-71a.

DeWitt entered the Premises on March 22, 2018. DeWitt was in the area to meet an individual selling a trailer which had been listed online, which DeWitt intended to view for possible purchase. R.R. 87a, 462a-63a. When DeWitt believed he was about five minutes from his destination, he spoke to the seller on the phone, and the seller indicated he would meet DeWitt when he arrived. R.R. 195a. DeWitt was following GPS directions via the Google Maps app on his phone to the seller's location, which he stated took him to the Premises where he saw a trailer. *Id.* DeWitt stated he did not go to the Premises to ask for directions. *Id.* at 482a-83a. Believing he was at the correct location,[1] DeWitt entered the Premises and knocked on the front door of the house located there. After receiving no answer, DeWitt walked elsewhere on the property, including in the direction of a barn where

---

[1] The address for the seller was written down on a piece of paper that was not produced in discovery, and DeWitt no longer had the phone he used for GPS directions on the day of his injury nor did he have the same Google account; therefore, the address purported to be the seller's was never established. R.R. 466a-67a. The seller's address had been provided to DeWitt by a friend with whom he intended to go into business. *Id.* at 95a, 113a. As of his deposition, DeWitt did not know the seller's name, nor did he have the seller's telephone number. R.R. 464a. DeWitt stated that he had never met or spoken to the Hochstetlers prior to when he was injured on the Premises. *Id.* at 86a. At no point did DeWitt state or allege, nor has any evidence been produced to show, that any of the Possessors were the seller of the trailer DeWitt had intended to purchase.

he again attempted to find the seller of the trailer or other occupant by calling out. *Id.* at 86-87a, 521a-24a. Mr. Hochstetler stated that there were two "No Trespassing" signs on the barn, and that those were the only "No Trespassing" signs on the Premises; however, DeWitt testified that he never saw any "No Trespassing" signs on the Premises.[2] *Id.* at 193a, 202a-10a, 222a. DeWitt stated in his deposition that he spent approximately five minutes on the Premises. *Id.* at 484a. After failing to locate or make contact with anyone on the Premises, DeWitt attempted to return to his vehicle by a different route than he had initially approached the front door of the house on the Premises. *Id.* at 521a-24a. DeWitt tripped or slipped and was injured while walking back to his vehicle. R.R. 484a-91a. The Hochstetlers first encountered DeWitt after he had fallen, and Mr. Hochstetler called an ambulance. *Id.* at 349a. Mr. Hochstetler stated to DeWitt that his wife had fallen earlier in the same area. *Id.* at 198a. There was a light dusting of snow at this time. *Id.* at 490a.

Following discovery, including depositions, establishing the preceding facts, Possessors filed motions for summary judgment with the trial court. After a hearing on the motions, the trial court granted summary judgment in favor of Possessors, concluding that DeWitt was a trespasser, and therefore, Possessors' inaction with respect to ice on the Premises did not breach any duty to DeWitt. R.R. 573a-74a, 596a-97a.

---

[2] The Concurring Opinion by our learned and well-respected colleague uses this text as an example of the Court perhaps not considering the record in the light most favorable to the non-moving party. We recite this testimony simply as background information. To be clear, the Court has considered this matter in accordance with the appropriate summary judgment standard. We ultimately conclude that DeWitt was a trespasser on the land based upon the fact that he did not have permission to be on the Premises and he exceeded the scope of the implied license to approach and knock on the door (to the extent such license exists in Pennsylvania law, *see infra*, Discussion), and assume no signage existed for the purpose of our analysis.

3

## II. ISSUES

On appeal,[3] we consider whether the trial court properly granted Possessors' motions for summary judgment based on the legal conclusion that DeWitt was a trespasser at the time of his injury on the premises.

DeWitt argues that he was a licensee when he entered the Premises. He contends that, while on the Premises for his own purposes, he was there seeking directions, or that he had an implied license to approach the Premises and knock on the door of the home to speak with an occupant. He further contends that Possessors were negligent by failing to clear the ice which DeWitt alleged he slipped on as they were aware of the hazard due to Mrs. Hochstetler's prior fall on the area.

Possessors[4] argue that DeWitt was a trespasser when he entered the Premises, and that he was not seeking directions, but rather mistakenly believed that he was in the correct location to meet the seller of the trailer he had travelled to view. They contend that even if a license existed for DeWitt to approach the door of the home and knock, he exceeded the scope of such license by remaining on and moving about the property after receiving no response at the door. Accordingly, they maintain that the only duty of care owed to DeWitt was not to engage in wanton or willful misconduct, and that DeWitt failed to plead conduct in breach of such duty.

---

[3] "On appeal from a trial court's order granting or denying summary judgment, our standard of review is de novo[,] and our scope of review is plenary." *Carpenter v. William Penn Sch. Dist.*, 295 A.3d 22, 29 n.5 (Pa. Cmwlth. 2023) (citation omitted). Summary judgment is properly entered only when, "after examining the record in the light most favorable to the non-moving party, and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." *See id.* (citation omitted).

[4] While the Hochstetlers and the Authority submitted a brief and Hochstetler Construction submitted its own separate brief, we need not delve into the distinctions between their arguments, especially as they relate to the individual responsibility of the various Possessors, given our disposition on the conclusion that DeWitt was a trespasser. Instead, we focus on the issue of DeWitt's status as an entrant.

4

# III. DISCUSSION

In order to sustain a negligence action, a litigant must show "(1) the defendant's duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Page v. City of Phila.*, 25 A.3d 471, 475 (Pa. Cmwlth. 2011).

In premises liability cases, the duty owed to an entrant to land is based on the entrant's status. An entrant may be an invitee, licensee, or trespasser, and the possessor's duty to the entrant is different for each such category. *See Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). Invitees are "(1) those who enter as members of the public for a purpose for which the land is held open to the public; and (2) those who enter for a purpose connected with the business of the possessor." Restatement (Second) of Torts § 332 (A.L.I. 1965), *cmt. a*. A licensee is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Id.* § 330. "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Id.* § 329.

A mistake by an entrant as to their status or permission to enter land does not relieve such entrant of trespasser status. Indeed,

> [i]n determining whether the person who enters or remains on land is a trespasser within the meaning of this Section, the question whether his entry has been intentional, negligent, or purely accidental is not material, except as it may bear upon the existence of a privilege to enter. . . . So far as the liability of the possessor of the land to the intruder is concerned, however, the possessor's duty, and liability, will be the same regardless of the manner of entry, so long as the entry itself is not privileged. The determining fact is the presence or absence of a privilege

5

to enter or remain on the land, and *the status of an accidental trespasser is still that of a trespasser*.

Restatement (Second) of Torts § 329, *cmt. c* (emphasis added). "It is, therefore, immaterial whether or not he honestly and reasonably believes that the land is his own, or that he has the consent of the possessor or of a third person having power to give consent on his behalf, or that he has a mistaken belief that he has some other privilege to enter." *Kopka v. Bell Tel. Co. of Pa.*, 91 A.2d 232, 235 (Pa. 1952) (quoting Restatement (First) of Torts § 158 *cmt. i*).

Under limited circumstances, an individual who does not otherwise have the permission of the possessor of land to enter may still be a licensee, such as "a traveler who is overtaken by a violent storm or who has lost his way, [who] is entitled to assume that there is no objection to his going to a neighboring house for shelter or direction." Restatement (Second) of Torts § 330, *cmt. e*.

Courts may make the determination as to an entrant's status under certain circumstances. "Generally, the determination of whether an individual is an invitee, licensee, or trespasser is one of fact for the jury. Where the evidence is insufficient to support an issue, however, it may be appropriate for the court to remove that issue from the jury." *Palange v. City of Phila.*, 640 A.2d 1305, 1307 (Pa. Super. 1994).

With respect to licensees,

[a] possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an

> unreasonable risk of harm to such licensees, and should
> expect that they will not discover or realize the danger, and
> (b) he fails to exercise reasonable care to make the
> condition safe, or to warn the licensees of the condition
> and the risk involved, and
> (c) the licensees do not know or have reason to know of
> the condition and the risk involved.

Restatement (Second) of Torts § 342 (A.L.I. 1965). In contrast, "[i]n Pennsylvania, a trespasser may recover for injuries sustained on land only if the possessor of land was guilty of wanton or willful negligence or misconduct." *Rossino v. Kovacs*, 718 A.2d 755, 756 (Pa. 1998) (citing *Engel v. Parkway Co.,* 266 A.2d 685 (Pa. 1970)).

In the instant case, it is clear from the facts on record that DeWitt was a trespasser at the time of his fall on the Premises. There is insufficient evidence to find that he enjoyed any other status as an entrant to the Premises. DeWitt has not pleaded nor presented any evidence that he was expressly permitted to enter the Premises but rather has argued that he was a licensee, despite the lack of express permission. However, he clearly did not have license to enter the property, in the absence of permission or consent from Possessors. He was not entering the property due to an emergency.[5] Nor was DeWitt at the Premises to request directions. Rather, assuming all facts in his favor, DeWitt was under the mistaken impression that the Premises was the location where he was going to meet the seller of the trailer he was interested in purchasing. Therefore, it was clear he did not intend to ask for directions, and DeWitt also clearly stated he did not intend to ask for directions.

---

[5] DeWitt testified that there was a light dusting of snow on the roadway, but no major storm or dangerous road conditions. R.R. 490a.

However, his mistake as to his status as a visitor to the Premises does not negate the fact that he was a trespasser.

Alternatively, DeWitt argues that he was a licensee with an implied license to approach the front door of the house on the Premises and attempt to speak with an occupant. DeWitt bases this contention on a case from the United States District Court for the Eastern District of Pennsylvania in which the court found that "Pennsylvania law recognizes the implied license to approach a residence and knock on the door in an effort to speak with the occupant, and that the scope of this license is determined by the 'prevailing customs of the community.'" *Moss v. Aaron's, Inc.*, 140 F. Supp. 3d 441, 446 (E.D. Pa. 2015) (citing *Florida v. Jardines*, 569 U.S. 1 (2013)). We note that in *Jardines*, discussion of this implied license arises in the context of what constitutes a reasonable entry by police onto an individual's property under the Fourth Amendment to the United States Constitution, U.S. Const. amend. IV. DeWitt has not cited, nor have we found, a case from a Pennsylvania appellate court suggesting such an implied license exists in the context of premises liability actions.

However, even if we accept, *arguendo*, DeWitt's contention that an implied license exists to knock on a door seeking to speak with an occupant, he exceeded the scope of his license by remaining on the property for five minutes and deviating from the front path rather than remaining by the door, therefore becoming a trespasser. To the extent an implicit license exists, "[t]his implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*,

8

569 U.S. at 8. DeWitt, however, knocked and then began to wander[6] about the Premises looking for an occupant for minutes before falling in a place other than the front path by which he had approached the door. He lingered longer without invitation. Therefore, DeWitt exceeded the scope of any implied license to knock, becoming a trespasser. It was in his capacity as a trespasser that DeWitt was ultimately injured on the property.

However, we do not suggest that DeWitt was owed no duty of care as a trespasser. Nor did the trial court conclude that, contrary to DeWitt's assertion in his brief. The proper standard of care owed to DeWitt as a trespasser was that Possessors would not injure him with wanton or willful misconduct. However,

---

[6] The Concurring Opinion also takes issue with our description of DeWitt's wandering. However, without intimate geographic knowledge of the Premises, we attempt simply to capture DeWitt's movements as described by him in his testimony and consider such testimony in the light most favorable to him. To be clear, the court in *Jardines* set reasonable expectations for uninvited visitors to private property very succinctly:

> We have accordingly recognized that the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds. This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do.

*Jardines*, 569 U.S. at 8 (internal citations and quotation marks omitted). Here, DeWitt did more than just linger. He did more than what would be expected of a trick-or-treater. He deviated from the direct path where he had license to knock and leave and was injured outside of that path. Whether a person unreasonably deviates from a path to knocking on a door where they have not been invited is a fact sensitive inquiry, and, even giving DeWitt the full benefit of any reasonable inferences of fact on a disputed record, this case, as a matter of law, falls into the category of those cases where the deviation causes the visitor's status to change to that of a trespasser.

DeWitt pleaded only negligence and did not allege any wanton or willful misconduct on the part of Possessors. Nor does the conduct alleged here, failure to clear or warn of an ice patch, rise to the level of wanton or willful misconduct. Accordingly, the trial court was correct in granting Possessors' motions for summary judgement.[7]

## IV. CONCLUSION

For the foregoing reasons, the trial court's order is affirmed.

_____
MATTHEW S. WOLF, Judge

---

[7] Given this disposition, we need not address the alternative grounds for affirmance Possessors set forth in their briefs, including the statute of limitations.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert DeWitt,                          :
              Appellant       :
                                    :
        v.                      :     No.  1345 C.D. 2024
                                    :
Bedford County Airport Authority,       :
Jason Hochstetler, Juanita              :
Hochstetler, and Hochstetler            :
Construction                            :

# **O R D E R**

AND NOW, this 10th day of November 2025, the August 5, 2024 order of the Court of Common Pleas of Bedford County in the above-captioned matter is AFFIRMED.

 

 

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert DeWitt,                              :
                Appellant            :
                                                    :
             v.                              :   No.  1345 C.D. 2024
                                                    :   Argued:  September 11, 2025
Bedford County Airport Authority,          :
Jason Hochstetler, Juanita                 :
Hochstetler, and Hochstetler               :
Construction                               :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                HONORABLE MATTHEW S. WOLF, Judge

<u>OPINION NOT REPORTED</u>

CONCURRING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED: November 10, 2025

      I concur with the majority in its disposition, affirming the Court of Common Pleas of Bedford County's order granting summary judgment in favor of Bedford County Airport Authority, Jason Hochstetler, Juanita Hochstetler, and Hochstetler Construction (collectively, Appellees).  I write separately out of concern that the majority opinion could be construed as applying the inappropriate standard for review of such orders.

      As the majority correctly notes, summary judgment is appropriate "only when, 'after examining the record **in the light most favorable to the non-moving party**, and **resolving all doubts** as to the existence of a genuine issue of material fact **against the moving party**, the moving party is clearly entitled to judgment as

a matter of law.'"  *DeWitt v. Bedford Cnty. Airport Auth.* (Pa. Cmwlth., No. 1345 C.D. 2024, filed November 10, 2025), slip op. at 4 n.2 (emphasis added) (quoting *Carpenter v. William Penn Sch. Dist.*, 295 A.3d 22, 29 n.5 (Pa. Cmwlth. 2023)).  At times, the majority is unclear that it is examining the record in the light most favorable to Appellant Robert DeWitt, as the non-moving party, and against Appellees as the moving parties.  For instance, on page 3, the majority discusses that Mr. Hochstetler testified there were "no trespassing" signs posted, whereas Mr. DeWitt testified he never saw any such signs.  For purposes of summary judgment, therefore, we must assume the property was **not posted**.

In addition, upon review of the entire record, it is unclear to me whether Mr. DeWitt wandered the property as much as the majority suggests.   Mr. DeWitt testified, and Mr. and Mrs. Hochstetler confirmed, that Mr. DeWitt parked **directly behind** the Hochstetlers' vehicle.  (Reproduced Record (R.R.) at 353a, 397a, 470a, 521a.)  Mr. DeWitt further testified that, after knocking on the door and getting no answer, he saw footprints leading towards a barn so he "[w]alked **in front** of their car," which again was **parked directly in front of his**, "like **ten feet in front of the car** and gave a yell." (*Id.* at 484a (emphasis added); *see also id.* at 486a (reiterating he did not walk behind the barn and "just was like **between that bush and that car** and gave a yell") (emphasis added), 522a (denying he walked to the other side of the barn, stating he "just went **right up here in front of their vehicle** where the footsteps were leading") (emphasis added).)[1]  Moreover, in his counterstatement of facts filed in opposition to one of the motions for summary judgment, Mr. DeWitt indicates he "walked back **through the driveway** to see if he could locate anyone towards the rear of the premises." (*Id.* at 180a (emphasis added).)  Mrs. Hochstetler

---

[1] Unfortunately, the photographs of the property in both the Reproduced Record and Original Record are of poor quality, making it difficult to fully understand the property's layout.

testified Appellant fell "**part ways between**" their vehicle and the walkway leading to the house. (*Id.* at 396a (emphasis added).) Therefore, it is not clear to me that Mr. DeWitt ever significantly deviated from his path in the driveway area.

These are just a couple of examples where I believe the majority **could** be read as going astray. Ultimately, however, because Mr. DeWitt did not establish wanton or willful misconduct to recover under a trespasser theory of liability, I agree that summary judgment was appropriate. Therefore, respectfully, I concur, but in result only.

_____

**RENÉE COHN JUBELIRER,** President Judge